## A95A0973. MOCK v. THE STATE.
### (462 SE2d 429)

Beasley, Chief Judge.

Mock was indicted for rape, child molestation, aggravated sodomy, aggravated sexual battery, and recidivism. Shortly before trial, he entered a guilty plea according to the procedure permitted in *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970), and now appeals the court's denial of his motion to withdraw it. The primary issue concerns the effect of Mock's prescription drug use and withdrawal upon his capacity to enter the plea.

In June 1993, shortly after return of the indictment, Mock was hospitalized and diagnosed as having experienced continuous alcohol abuse and dependence. After submitting to a court-ordered forensic examination, he was found competent to stand trial.

At the guilty plea hearing in May 1994, the assistant district attorney stated that the evidence would show that in March 1993, the eight-year-old victim disclosed to her mother that the previous summer, Mock had performed various sexual acts involving his finger, mouth, and penis and her vagina and anus. When confronted with these accusations, Mock told police and others that he was drunk during this period and was afraid he might have done something but did not recall. The State and defense negotiated a plea under which the State agreed to waive the recidivist count, enter a nolle prosequi as to the rape count, and recommend that Mock receive concurrent ten-year sentences on the remaining counts. The court permitted the plea after examining Mock, accepting a stipulation by counsel, and independently finding that there was a factual basis for the plea.

From the evidence introduced at a hearing on Mock's motion to withdraw his plea, it was shown that at the time of the plea hearing, Mock had been incarcerated for about a year. During this period, he had been prescribed 50 milligrams of Vistaril (an anti-anxiety medication) three times a day, 20 milligrams of Prozac (an antidepressant) once a day, and 200 milligrams of Elavil (an antidepressant) a day with a 150-milligram dosage taken each night. The medical records showed that due to concern about Prozac increasing the serum levels of the Elavil, Mock's Elavil was temporarily withheld beginning the night before the plea hearing.

A medical expert called by Mock testified that it is somewhat dangerous to abruptly stop administering Elavil, so that the accepted method of withdrawal is a slow tapering off. He further testified that Elavil and Vistaril potentiate one another, and adding Prozac "can kind of upset the boat in several ways," such as by increasing the serum levels of the other two. In the opinion of Mock's expert, the purpose of these three drugs is to blunt feelings such as anxiety and depression to the point that the person taking the medications does not understand or care what is happening. He opined that the combined effect of administering these drugs to Mock over a prolonged period, together with withholding his Elavil dose the night before the plea hearing, would have been to impair his thinking ability and render him anxious, confused, and lethargic. But he had never examined Mock, and he admitted that it is difficult to determine the combined effect of these drugs in any given individual. Although he testified that alcoholics often have liver damage which interferes with the metabolizing of these three drugs, he did not know whether Mock's liver was damaged.

The testimony of the medical expert called by the State, a psychiatrist from Georgia Regional Hospital, sharply conflicted with this testimony. He testified that Elavil and Prozac stabilize or normalize brain chemistry in people who are clinically depressed and that the purpose of administering these drugs, in combination with Vistaril, would be to render the patient more capable of clear and rational thought. He further testified that prescribing these three drugs in combination is rare but does not fall outside the accepted standard of care. He opined that it is unlikely that the taking of these three medications would have impaired Mock's thinking such that he would have been unable to enter a plea intelligently or voluntarily and that the most likely effect of withholding the nightly dose of Elavil would have been to render him a bit more anxious the next day.

Mock's experienced trial attorney testified that when he first met Mock, he was very lethargic and appeared to be under the influence of drugs but became more lucid and improved each and every time he saw him. At the guilty plea hearing, Mock did not seem any different to him than on other occasions.

The court, which had itself questioned the defendant and observed his demeanor at the plea hearing, ruled that the plea was entered knowingly, intelligently, and voluntarily. The court noted that a psychiatrist had examined Mock the day before he pleaded guilty and did not find anything wrong. Mock signed the negotiated plea form.

1. It is contended that in view of the fact that Mock was under the influence of mind-altering prescription drugs, one of which was withheld from him the night before the plea hearing, the State could not, as a matter of law, meet its burden of showing that his plea was intelligent, knowing, and voluntary. He cites no authority for this proposition, and we have found none. We reject it as having no basis in law or logic. The real question is whether as a matter of fact, the effect of the drugs being taken, together with the absence of the Elavil, prevented the plea from meeting the constitutional test.

It is true that before accepting the plea, the court did not make the usual inquiry as to whether the defendant was under the influence of alcohol or drugs. At the motion hearing, the court indicated that it did not ask this question because Mock had been incarcerated for at least a year and did not appear to be incapacitated. It is not a specific subject of inquiry addressed in Uniform Superior Court Rule 33, and there is no other per se legal requirement that this question be asked. However, it is the preferred practice to do so, particularly in light of the high incidence of drug and alcohol use by criminal defendants. In addition to assuring validity of the plea when taken, expressly questioning defendant on this subject forecloses later attacks such as the one in this case.

The appellate courts have held that even where a trial court fails

to fully address the factors set forth in USCR 33.8, the error may be deemed harmless if "the record as a whole demonstrates that appellant's plea was knowing and voluntary." *King v. State*, 215 Ga. App. 139, 140 (1) (449 SE2d 870) (1994). See also *Wood v. State*, 190 Ga. App. 179, 181 (2) (378 SE2d 520) (1989); *McClendon v. State*, 256 Ga. 480, 481 (2) (350 SE2d 235) (1986). Cf. *Purvis v. Connell*, 227 Ga. 764 (182 SE2d 892) (1971).

Under all the circumstances here, including those shown by the inquiries of defendant at the plea taking, it was not error to refuse a withdrawal of the plea, as the evidence supported the court's findings of fact. There was ample basis for the court to find that the combined effect of the drugs administered to Mock improved his thinking ability and that the withdrawal of the Elavil did not deprive him of the capacity to knowingly, intelligently, and voluntarily enter his plea. See generally *Mathis v. State*, 199 Ga. App. 538 (405 SE2d 528) (1991); compare *Rowland v. State*, 72 Ga. App. 793 (35 SE2d 372) (1945).

2. Mock also contends that at the plea hearing the court did not determine on the record that he understood the nature of the charges, as required by USCR 33.8, in that the court did not explain the elements of the criminal charges to him.

Again, it is by far better to do so and thereby establish contemporary assurance as well as avoid later questioning, but the law does not require the trial court to personally inform the accused of the elements of the crime to which he is pleading guilty. *Clark v. State*, 186 Ga. App. 106, 107 (1) (366 SE2d 361) (1988). Mock told the court that he had time to discuss the situation with his lawyer and was satisfied with his services. " '(I)t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.' [Cit.] It is not appellant's contention that he did not have notice of the crime to which he pleaded guilty, but that the *trial court* did not inform him of the elements of the crime. It was not error to refuse to permit appellant to withdraw his plea based on this ground. [Cit.]" (Emphasis in original.) Id.; compare *Breland v. Smith*, 247 Ga. 690, 691 (2) (279 SE2d 204) (1981).

3. "[A]fter the pronouncement of sentence a motion to withdraw a plea of guilty addresses itself to the sound discretion of the trial court, and this discretion will not be disturbed unless manifestly abused. [Cit.]" *Conlogue v. State*, 243 Ga. 141 (1) (253 SE2d 168) (1979). We find no such abuse.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 13, 1995 —

*Calhoun & Associates, John R. Calhoun, Gregory N. Crawford,* for appellant.

*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Assistant District Attorney,* for appellee.